JAMES WHITE v. ALICE LOUISE TEAGUE, PLAZA EXPRESS CO., a Corporation, and CARL COLLIER, Appellants.—No. 38991.—182 S. W. (2d) 288.

Division Two, September 5, 1944.

*Max B. Reid, Reid & Evrard, John M. Dalton* and *Arthur U. Good-man, Jr.,* for appellant Alice Louise Teague.

250

· *R. F. Baynes, Harry H. Bock* and *L. R. Jones* for appellants Plaza Express Company and Carl Collier.

*Ward & Reeves* and *Hal H. McHaney* for respondent.

254

WESTHUES, C.—Respondent White filed this suit in the Pemiscot County Circuit Court against appellants Alice Louise Teague, Carl Collier and Plaza Express Company, a Corporation, to recover damages for the death of his wife who it was alleged met her death through the negligence of appellants. The case was transferred on change of venue to Dunklin county, Missouri. A trial resulted in a verdict for plaintiff in the sum of $5,000. An appeal was taken from the judgment to the Springfield Court of Appeals. That court affirmed the judgment but one of the judges dissented and deemed the majority opinion to be in conflict with controlling decisions of this court. The case was therefore certified here for determination. The opinion of the court of appeals is reported in 177 S. W. (2d) 517. The reason for the dissent, as per the dissenting opinion, was that the evidence was deemed to be insufficient to sustain a verdict against Carl Collier and the Plaza Express Company. The case was submitted to a jury as against these defendants under the humanitarian doctrine.

The opinion of the court of appeals is rather lengthy and the facts are there set forth in detail. A number of points were briefed by appellants. We will refer only briefly to some of these since they

were fully considered and correctly determined by the court of appeals. We will give the question of the sufficiency of the evidence as against Collier and the Plaza Express Company particular consideration. Respondent's wife lost her life as the result of a collision of a car driven by defendant Teague in which she was riding as a guest and a trailer truck owned by the Plaza Express Company and driven by appellant Collier. The collision occurred about 7:30 P. M., September 20, 1941, in Pemiscot county at the intersection of highway 61 and route "U". The Plaza truck was being driven north on highway 61. The Teague car was being driven west on route "U". It was dark, the weather fair, the roadways dry and the surrounding territory level. It was conceded that the car driven by Miss Teague in which respondent's wife was riding was traveling at a speed of about fifty miles per hour or more and that it struck the trailer just to the rear of the truck wheels upon which the trailer was resting. Miss Teague testified that she did not know there was a highway at that point intersecting with route "U"; that she was not acquainted with the roadway and did not see the truck until the moment of the collision; that the speed of her car was not checked prior to the collision; that she did not notice a warning sign nor a stop sign located on route "U" near highway 61. Under that evidence appellant Teague was guilty of negligence as a matter of law. However, Mrs. White, the deceased, was a guest and the negligence of Teague cannot be imputed to her. There was no contention made that it should be.

The question on which the judges of the court of appeals could not agree was the sufficiency of the evidence to justify the submission of the case under the humanitarian doctrine against the Plaza Company and its agent. The agent and driver, Collier, testified that he saw the lights of the Teague car as it approached the intersection when it was over a half mile from the point of collision; that he was driving at a speed of about thirty-five miles per hour; that he did not sound a horn or slacken the speed of his truck until after the collision. The case was submitted to the jury on the theory that if Collier saw, or by the exercise of the highest degree of care could have seen or discovered that the occupants of the Teague car were in a perilous position because of obliviousness, in time to have averted the collision, then a verdict for plaintiff was justified. It is earnestly insisted by appellants Collier and the Plaza Company that the evidence wholly failed to justify such a submission. We shall examine the evidence on this point. As the truck approached the intersection a car being driven east on route "U" stopped west of highway 61 to let the truck pass over the intersection. The driver of this car testified for plaintiff. Note his evidence as to what he saw:

"Well, what I saw, the car ran into the truck. The car didn't seem to me to make any check before entering the intersection of the

two highways. It didn't seem to cut its speed. It didn't slow down at all. The truck seemed to me it was traveling around thirty-five miles an hour, just looking at it. The automobile was traveling between forty-five or fifty, I would say, just looking at it but not knowing. That is my best judgment. I couldn't be exact. When these two vehicles came together, my car was parked right behind the stop sign on the west side of the road. Yes, that would be in about fifteen or twenty feet.''

. . .

''The Plaza Express Company truck didn't seem to slacken its speed any before it reached that intersection. I didn't see any signals it gave. I didn't hear any either. It did not change its rate of speed that I could observe. It gave no signals of any kind. The Chevrolet did not give any signals of any kind, either.''

Appellant Collier's version of the collision was as follows:

''Q. And was it being driven by a Miss Teague? A. That is who they said was the driver. I couldn't tell who was the driver. The driver of the car did not at any time give me a signal.

''Q. Either by sounding the horn, or any other way? A. No, sir. They did not ever slow down or slacken their speed as they approached that intersection. I was traveling thirty-five miles an hour as I approached the intersection. No, sir, I did not blow my horn. I did not apply my brakes until after the collision.''

. . .

''Q. Then for about a mile you could see this car coming, and were you able to judge the speed of it? A. No, sir.''

. . .

''Q. And how fast would you say it was going when you got in a position where you could judge? A. I couldn't judge that until just before it struck me. It was practically on top of me, I judge by the impact and all. I was watching this car even before the impact and was watching the one coming from the other direction. The one coming from the other direction had already pulled up and stopped. Yes, sir, it had its lights on and I could see that it had stopped.

''Q. So there was nothing about that car to cause you any alarm? A. Not unless he pulled out in front of me.

''Q. You knew that it was safely parked, and that you could proceed as far as it was concerned? A. No, sir, no car down there was safely parked.

''Q. I didn't understand. A. No car down there is safely parked; they start right across in front of you, when you get right up on top of them. Yes, sir, I was watching the car, too.

''Q. And did you abandon your interest in the car coming from the east, the Teague car, with your watching the car to the west? A. No, sir. I continued to watch the Teague car, too. The Teague car

did not drive up and stop. I lost sight of the Teague car when I got behind those trees and that filling station, and the house.

"Q. So for only the short distance there you lost sight of it while it was behind the trees and the filling station, in the southeast corner of the intersection? A. After it came from behind the filling station and trees I was able to see it again."

. . .

"A. No, sir, I never looked at the Teague car any more, because they could see me coming, and I could see them. I looked across at the other car, and back at the Teague car, and by that time they were right into me.

"Q. Then when you directed your gaze from the Teague car to look at the car that was over to the west of the highway, was the Teague car going fast? A. I couldn't tell. I was looking right straight practically at it, when I saw it. I couldn't detect whether it was slowing down or not. The impression they gave me was they never knew that road was there, never slowed down or nothing. My last impression of the Teague car before the crash was that they were not slowing down. Then I put on my brakes just as I got to the intersection; I was sitting in the intersection, practically. I didn't put on my brakes until I got to the intersection, I was practically sitting in the intersection."

As we see it appellant Collier's evidence justifies the inference that he sensed danger, yet, under his own evidence and the evidence of the driver of the parked car, the speed of the truck was not slackened, nor did he give any signal or do anything ▇ to avert the on-coming collision. It seems to us that the evidence fully justified the submission of the case to a jury. Collier testified that he could have stopped the truck within a distance of seventy to eighty feet. A mere slackening of the speed of the truck as he approached the intersection may well have avoided the collision.

In each case cited in the dissenting opinion the facts were entirely different, particularly as to the evidence from which an inference could be drawn that the party charged with negligence could have discovered the danger in time to have averted the injury. The cases cited in the dissenting opinion are, Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482, l. c. 484 and Knorp v. Thompson, 352 Mo. 44, 175 S. W. (2d) 889, l. c. 899, etc. A number of cases relied on by appellants are: Bashkow v. McBride, 177 S. W. (2d) 637; Krause v. Pitcairn, 165 S. W. (2d) l. c. 670, (correct citation, 350 Mo. 339, 167 S. W. (2d) 74); Lotta v. Kansas City Public Service Co., 117 S. W. (2d) 296, l. c. 301, 342 Mo. 743; Ziegelmeier v. East St. Louis & Suburban Ry. Co., 330 Mo. 1013, 51 S. W. (2d) 1027, l. c. 1029. We find nothing in these cases contrary to our ruling in this case. The evidence in this case justified an inference that Collier saw and realized that the driver of the Teague car was oblivious of the presence

of the truck approaching the intersection in time to have averted the collision. The point must be ruled against appellants.

■■ Other points relied on were fully discussed and reviewed in the opinion of the court of appeals and we will review them briefly. It is urged that the trial court erred in requiring the attorneys for appellants to give the names of the liability insurers they were representing. This was done out of the hearing of the jury. Later the prospective jurors were asked if any one of them had any connection with any of these named insurers. This procedure did not constitute error. The cases cited by the court of appeals so ruled. See Wack v. F. E. Schoenberg Mfg. Co., 331 Mo. 197, 53 S. W. (2d) 28; Hatton v. Sidman, 169 S. W. (2d) 91, l. c. 94; Jenkins v. Chase, 53 S. W. (2d) 21, l. c. 22. Another question arose when the defendants were given the jury list for the purpose of making three challenges. They reported to the court that they could not agree on the challenges to be made. Defendant Teague complained because the court would not give her the right to strike the name of one juror over the objection of the other defendants. The trial court informed the defendants that if they could not agree the clerk would be instructed to call the first twelve names on the list. This procedure was correct because the defendants, by virtue of sec. 720, R. S..Mo. (1939), Mo. R. S. A., must join in the challenges made. See Clark v. St. Louis & S. R. Co., 137 S. W. 583, l. c. 588 (2), 234 Mo. 396; Hunt v. Mo. R. Co., 14 Mo. App. 160, l. c. 164.

■ It is claimed that the petition was not filed within six months and therefore plaintiff's time within which he had a right to file this suit as the husband of the deceased had expired. The injury occurred on September 20, 1941. Suit was filed March 20, 1942. That was within six months. As to computation of time see sec. 655, R. S. Mo. (1939), Mo. R. S. A., and cases cited in notes 175-178; Thompson v. Farmers' Exchange Bank, 333 Mo. 437, 62 S. W. (2d) 803, l. c. 806 (2-6).

■ Appellant Teague complained of instruction "9-D" given at the request of the other appellants. It informed the jury in substance that if one, through the negligence of another, was suddenly placed in an emergency and compelled to act instantly to avoid injury, he could not be guilty of negligence if he made a choice and acted, even though the choice made may not have been the wisest. This instruction in no way affected appellant Teague and had no bearing on any issue presented by her. It was not prejudicial to her interest and therefore she was in no position to complain.

■ The court gave an instruction, at appellant Teague's request, informing the jury that if the Teague car reached the intersection about the same time as the truck then the Teague car had the right of way. After this instruction was read to the jury the court withdrew it and informed the jury why this action was taken. The

instruction should not have been given for two apparent reasons: First, under the undisputed evidence the truck reached the center of the roadway before the Teague car; second, there was a stop sign against traffic on route "U" and no such stop sign against traffic on highway 61. The action of the court in withdrawing the instruction was proper.

Appellants, Plaza Express Company and Collier, assigned error to rulings made by the trial court permitting certain remarks to be made by counsel for plaintiff and also ■ by counsel for Teague during the argument to the jury. These arguments and the comment of the court will be found set out in detail in the opinion of the court of appeals. See 177 S. W. (2d) 517, l. c. 527, 528. It will be found that the remarks of counsel objected to were not of a serious nature and the ruling of the court could not be held to be reversible error because the trial court has some discretion in such matters. Again it will be found that the trial court sustained the major portion of appellants' objections.

Finding no reversible error the judgment is affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES C., is adopted as the opinion of the court. All the judges concur.