Edgar ADKINS, Appellant,

v.

Otto John BOSS, Jr., Elmer Boss, Meyer Manufacturing Corporation, and William Creech, Respondents.

No. 44932.

Supreme Court of Missouri.

Division No. 1.

April 9, 1956.

Motion for Rehearing or to Transfer to Court en Banc Denied May 14, 1956.

John B. Newberry, Springfield, Walker, Daniel, Clampett & Rittershouse, B. H. Clampett, Springfield, for appellant.

Rozier, Carson & Nacy, Jefferson City, for respondents Otto John Boss, Jr., and Elmer Boss.

Boyle G. Clark, Raymond C. Lewis, Jr., Columbia, Mosby & Mosby, Linn, Clark & Becker, Columbia, of counsel, for respondents Meyer Mfg. Co. and William Creech.

VAN OSDOL, Commissioner.

This is an action for $150,000 damages for personal injuries sustained in a collision of three motor vehicles. The collision occurred at 9 o'clock in the evening of January 5, 1954, at the junction of U. S. Highway No. 66 and U. S. Highway No. 50 in Franklin County. Plaintiff sought recovery on the theory of primary negligence of defendants. The trial court sustained defendants' motions for a directed verdict at the conclusion of plaintiff's evidence, and plaintiff has appealed from the ensuing judgment for defendants.

Herein plaintiff-appellant, Edgar Adkins, contends the trial court erred in directing a verdict for defendants. He asserts that a submissible case was made against all defendants, and that he was not contributorily negligent as a matter of law. Plaintiff also contends the trial court erred in excluding evidence proffered in plaintiff's behalf. Although defendants-respondents make no contention plaintiff did not make out a case of actionable negligence against them, they say the motion for a directed verdict was correctly sustained because plaintiff's own evidence, as a matter of law, demonstrates he was guilty of contributory negligence.

In determining the question whether a plaintiff was contributorily negligent as a matter of law, we bear in mind that plaintiff's negligence is a jury question, unless it may be said from all the evidence and the reasonable inferences therefrom, viewed in the light most favorable to plaintiff, the only reasonable conclusion is that plaintiff was negligent and that his negligence was a proximate cause of his injury. Creech v. Riss & Co., Mo.Sup., 285 S.W.2d 554. To this we add that in considering this question we also recognize the principle that a plaintiff is bound by his own testimony.

The instant case is a companion case to Creech v. Riss & Co., supra, and reference may be made to the Creech case for a survey of the physical setting of the casualty; but the evidence in the instant case varies in some respects from the evidence in the Creech case, and it is necessary to make a statement of the evidence as introduced in this case, in so far as the evidence bears on the question of plaintiff's contributory negligence.

At the junction where the collision occurred, U. S. Highway No. 66 lies in a general northeast-southwest direction, but we shall hereinafter consider it as if it were a north-south highway. Highway 66 is a four-lane, paved highway—two (east) lanes accommodating northbound traffic and two (west) lanes accommodating southbound traffic. The northbound traffic lanes are divided from the southbound by a parkway 12 or 13 feet wide.

U. S. Highway No. 50 lies in an east-west direction and, approaching Highway 66 from the west, divides into a paved, triple-approach junction with Highway 66. Highway 50 does not pass to the eastward of Highway 66. Northwardly from the junction for several miles, traffic on Highway 50 utilizes the same paved traffic lanes as Highway 66. The northerly branch of the approach accommodates traffic into Highway 50 from the southbound (west) lanes of Highway 66. The southerly branch accommodates traffic from Highway 50 into the southbound lanes of Highway 66, as well as traffic moving from the northbound lanes of Highway 66 over into Highway 50. The central or middle branch of the approach accommodates traffic from Highway 50 over into the northbound lanes of Highway 66. This central paved approach intersects the west edge of the southbound lanes of Highway 66 at an angle of approximately forty degrees and passes eastwardly through the parkway to the northbound lanes of Highway 66. Between the northerly and the central, and between the central and the southerly branches of the approach, there are ir-regular-triangular areas of sodded berm.

Coming from the south on Highway 66 from a point 1100 feet south of the junction, a traveler moves around a right-hand curve of about two degrees, and down a three per cent grade; however, the highway "flattens out" and "straightens" in its near approach to the junction. There is a barrier 100 feet long on the eastern edge of Highway 66. The barrier of "zig-zag" marked planks and cables and posts is a little over 8 feet east of and parallels the eastern edge of the pavement. The southern end of the barrier is about on a line with an eastwardly projected south side of the central paved approach of Highway 50.

As we have said, three vehicles came into collision.

(1) Defendant Otto John Boss, Jr., driving east on Highway 50 approached Highway 66 in a "straight-bed," ton-and-a-half truck loaded with cattle. The truck belonged to defendant Elmer Boss, who, driving another cattle truck, had preceded Otto John in driving into and through the junction and northwardly on Highway 66 toward St. Louis. Otto John (following his brother, defendant Elmer, as stated) stopped the truck he was driving (before passing through the southbound lanes of Highway 66) at a dual stop sign (with red blinker) on his right in the triangular berm south of the central approach. The stop sign is 7 feet 9 inches west of the west side of the southbound lanes of Highway 66. The stop sign is approximately 78 feet west of the west side of the northbound paved lanes of Highway 66. Defendant Otto John then "rolled out" across the southbound lanes into the parkway steadily speeding up in passing through the parkway (the dividing part of Highway 66) and into the northbound lanes of Highway 66.

(2) Plaintiff Edgar Adkins had been approaching from the southward on Highway 66. He was driving a combination motor vehicle consisting of a White tractor and a Fruehoff trailer belonging to Riss & Company. The combination vehicle was

42 or 43 feet long and weighed 21,000 pounds. It was loaded with freight, frozen horse meat, weighing 29,900 pounds.

According to plaintiff's testimony, the Riss vehicle driven by plaintiff and the truck driven by defendant (Otto John) Boss collided at a point in the northbound lanes of Highway 66 about even with the second or third post from the north end of the plank-cable-post barrier east of the intersection. Plaintiff had cut off to the right, "off of the highway," and after the impact he swerved the "wheels back on to the highway." The left end of the front bumper of the Riss tractor had "caught the other truck right up over the back wheel on the right side."

The Riss vehicle had been followed at a distance of about 300 feet by a sedan driven by one Hatfield. As the Riss equipment was moving in its approach to the point of collision, Hatfield pulled his sedan into the left of the northbound lanes of Highway 66 and stopped near the central parkway at a point about 200 feet from the intersection.

(3) The Hatfield automobile had been followed in turn by a combination motor vehicle belonging to defendant Meyer Manufacturing Corporation driven by defendant William Creech. Defendant Creech moved the Meyer vehicle past the parked automobile belonging to Hatfield and drove into collision with the rear end of the Boss truck which had come to rest "sitting in the middle of the highway."

When plaintiff, moving northwardly on Highway 66 in his Riss combination equipment loaded with a cargo of freight as stated supra, "topped over the grade" of the hill south of the junction plaintiff had a commanding northward view of all points down to and around the intersection at the junction. He saw a truck "pull out" of Highway 50 onto Highway 66. This truck was driven by defendant Elmer Boss. Plaintiff saw the other Boss truck (driven by defendant Otto John) stop at the stop sign west of the southbound lanes of Highway 66. Plaintiff said that, when he was six to eight hundred feet south of the junction and saw the Boss truck "just

moving out from the stop sign," he (plaintiff) was moving, "I would say * * * 48 miles an hour." He applied the brakes to "keep the truck from running up and hitting the governor." He did not apply the brakes again until "just before I went off the pavement."

Plaintiff was a truck driver of fifteen years' experience. As an employee of Riss & Company, he had driven tractor-trailer equipment for about two years. The power brakes were in good condition, and the pavement was dry. Plaintiff was familiar with the approach of the intersecting highways at the junction, including the circumstance that but one stop sign was situate on the central approach at the junction. Now when he had approached to a point 1100 feet south of the junction he had passed a "blinker" sign on his right bearing the legend, "Speed Zone 40 Miles." Approximately 300 feet farther to the northward, he had passed a yellow sign with the legend, "Junction Slow 800 Ft." Approximately 250 feet farther on, plaintiff had passed a sign bearing the abbreviation "Jct" and arrows indicating passage over Highway 66 northwardly and over Highway 50 westwardly. And still farther on, at a point about 200 feet south of the junction, plaintiff had passed a sign indicating directions northwardly toward St. Louis over Highway 66 and westwardly toward Jefferson City over Highway 50.

When plaintiff was three to five hundred feet away, "something like that," he saw the (second) Boss truck pick up speed at the divided part of the highway. On cross-examination, plaintiff said he was 150 to 300 feet back from the intersection— "might have been anywhere up to 300 feet away"—when he saw the Boss truck speed up. It moved steadily through the divided part of the highway and out into the northbound lanes of Highway 66. When plaintiff saw the Boss truck speed up at the dividing line between the traffic lanes, plaintiff's equipment was moving at a speed of 35 to 40 miles an hour, "something like that." When he came to the south crossover his equipment was moving 25 to 30 miles per hour. All the while he had been

watching the movement of the Boss vehicle, but, as stated, he had not applied the brakes since he acted in keeping his speed below that limited by the governor. Once in his testimony, plaintiff said he never applied the brakes until he was 75 to 100 feet from the Boss truck. Again he said he applied the brakes when he veered or swerved eastwardly off the pavement, and he said that at that time he was 25 to 30 or 40 feet from the Boss vehicle. And again he said that after the Boss truck speeded up, "I flashed my lights from dim to bright, backwards and forwards, sounded my air horns, and then * * * applied my brakes." But he also testified that his vehicle moved over on the east shoulder at a point which he designated on a plat—this point, as designated by plaintiff, was 75 feet south of the point of collision. And when he was asked of the distance he was from the central approach of Highway 50 when the Boss truck picked up speed, plaintiff designated a point on the plat approximately 200 feet south of the south line of the central approach, and approximately 285 feet south of the point where he said his tractor-trailer and the Boss vehicle collided. Construing plaintiff's own testimony from a standpoint most favorable to him, plaintiff was 150 or 200 feet from the south line of the central approach and 235 or 285 feet from the point of collision when he saw the Boss truck pick up speed and move steadily over into the northbound lanes of Highway 66.

Plaintiff testified he could have stopped his dual equipment in 45 to 60 feet, "pretty close to it," if moving at 35 miles per hour. At 30 miles per hour, he could have stopped in 35 to 45 feet, "I think I could, pretty close to it." At 25 miles per hour, he could have stopped his vehicle in 25 to 35 feet, "something like that."

In considering whether or not plaintiff was guilty of contributory negligence as a matter of law, we shall not confine ourselves to the time when plaintiff, in the exercise of the highest degree of care, saw or should have seen and realized there was impending danger of a collision.

We shall take into account plaintiff's conduct, and the precautions which the circumstances reasonably demanded antecedent to as well as when plaintiff's own safety was immediately endangered.

It has been argued herein by plaintiff that, inasmuch as the Boss vehicle approached from the left of plaintiff, he, plaintiff, had priority of right of way through the junction; but, this is not a case where two vehicles entered an intersection at approximately the same time. Subsection 17, Section 304.020, L.1953, p. 587, at page 593, V.A.M.S. § 304.021, subd. 2. And in this case we do not say, nor is it necessary to say, that plaintiff was bound by his estimates of stopping distances, which distances would seem quite remarkable. See Vol. 9C, Blashfield's Cyclopedia of Automobile Law and Practice, Section 6237, pp. 410–416. But we do say that, in this case, testimony of stopping distances was not necessary in determining the question of plaintiff's contributory negligence, and any error in excluding testimony of stopping distances was not prejudicial in this case. This is because we believe no contention reasonably could be made that plaintiff traveling in his approach to the intersection, in the exercise of the highest degree of care for his own safety in the circumstances stated by him, could not and should not have safely regulated the speed and operation of his equipment so as to have avoided a collision.

Although Highway 66 may be considered a "through" highway, plaintiff knew of the situation at the junction, including the fact that only one stop sign was set immediately west of the southbound lanes of Highway 66. And, of course, he must have seen and known of the cautionary signs to his right as he, driving his heavy and heavily laden equipment, came down the hill on the curved highway into near approach to the junction. The only evidence introduced on the subject was that when the Riss equipment came down the hill and into near approach to the junction, the nearest vehicle to the rear of the Riss equipment was the sedan driven at a distance of 300

feet by the witness Hatfield. The signs along Highway 66 must have warned plaintiff of potential danger at the junction to himself, as well as to others. They cautioned him of passage provided vehicles from Highway 50 into the northbound lanes of Highway 66. As we have seen, after the time he was six to eight hundred feet from and until he was in near approach to a collision, plaintiff made no attempt to "take up" or bring his heavy equipment into control or to further slacken speed, so as to guard against the development of real danger which, as we have said, plaintiff must have known was potential at the intersection. Additionally, all the while he was aware of the movement of the Boss vehicles off of Highway 50, and also saw the second Boss vehicle pick up speed in moving at an acute angle over toward and into the northbound lanes of Highway 66. He took no precautionary measure until it was too late. He carelessly, almost deliberately, drove into danger. His own testimony demonstrates that in the stated circumstances plaintiff was taking a chance that the approach of his heavy equipment would dominate and command a priority of passage through the intersection. We believe it reasonably could not be said plaintiff's conduct was not negligent and did not have its part in causing his injury.

Although the facts and circumstances shown in the following cases are not like those in the instant case, we think the results in these cases on their facts support our conclusion here. See and examine the facts of White v. Teague, 353 Mo. 247, 182 S.W.2d 288, in which case the (primary) conduct of defendant Teague was negligent as a matter of law; Claridge v. Anzolone, 359 Mo. 65, 220 S.W.2d 33, in which plaintiff motorcyclist was contributorily negligent as a matter of law in taking a chance by attempting to precede defendant's truck across the intersection; and Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495, in which case plaintiff was guilty of contributory negligence as a matter of law in attempting to drive his motor vehicle across the intersection, having seen the near approach of traffic.

Plaintiff-appellant has cited and stressed the cases of Keely v. Arkansas Motor Freight Lines, Mo.Sup., 278 S.W.2d 765; Moore v. Middlewest Freightways Inc., Mo. Sup., 266 S.W.2d 578; and Stone v. Reed, Mo.App., 247 S.W.2d 325. In the Keely case, plaintiff was confronted with trucks coming toward him abreast of each other. Plaintiff Keely "feathered" his brakes and reduced speed, and then applied his brakes "hard" but was unable to stop before the collision. In the Moore case, a case treating with a head-on collision, defendant's driver was approaching on the wrong side of the highway, and it would seem plaintiff Moore was entitled to assume the driver of defendant's vehicle was momentarily negligent and would right his course by turning back on his own right side, until such a time as plaintiff, in the exercise of the highest degree of care for his own safety, should have known defendant's driver could not or would not move defendant's vehicle back over onto its right side of the highway. In the Stone case, plaintiff Stone moved into an intersection when defendant was four or five hundred feet to plaintiff's right. A stop sign confronted defendant in his approach to the intersection. In the circumstances, a jury could reasonably find that plaintiff Stone had a right to assume he was entitled to move into and across the intersection first and that defendant would slacken speed or stop or change direction at the intersection. The question of negligence of plaintiff Stone's conduct after he was out in the intersection and observed defendant was not going to slacken speed or stop or change direction was a jury question. We note that in these cases the reviewing courts were examining, more particularly, questions of plaintiffs' asserted contributory negligence in their choice of a course of action when confronted with situations of danger brought about by defendants' negligence, and in the creation of which situations no negligence of plaintiffs had a part.

Plaintiff-appellant has also made the contention of error in excluding excerpts or portions of a deposition of defend-

ant Otto John Boss, Jr., which portions were comprised of answers of that defendant which might be construed as admissions that he failed to look to his right at a time when he could have seen the Riss truck approaching the junction. These proffered portions of defendant Otto John's deposition were pertinent to the alleged negligence of defendant Boss in failing to keep a lookout when approaching and moving into the intersection, and the contended error in excluding these admissions assertedly against interest is of no significance here in view of our ruling that plaintiff was guilty of contributory negligence as a matter of law.

The judgment should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.