Harry J. DOWNING, Respondent,

v.

Taft DIXON, Appellant,

and

Bill Hullet, Respondent.

No. 46172.

Supreme Court of Missouri,

Division No. 2.

May 12, 1958.

Opinion Modified on Court's Own Motion
June 9, 1958.

Motion for Rehearing or to Modify
Opinion Denied June 9, 1958.

Riddle & Baker, Veryl L. Riddle, Charles H. Baker, Malden, James A. Vickery, Caruthersville, for appellant.

Web A. Welker, Portageville, for respondent Downing.

Robert H. Jones, Jones & Jones, Kennett, for respondent Hullet.

EAGER, Judge.

This case is comprised of several personal injury claims, arising from a single automobile collision. The collision occurred just south of Kennett, in Dunklin County, on January 27, 1956. Plaintiff and his wife were riding with her brother-in-law, the defendant Dixon, when the latter's 1955 Ford collided at an intersection with a Chevrolet driven by the defendant Hullet. Downing sued both Dixon and Hullet in two counts, the first for his own personal injuries, and the second for loss of his wife's services and his expenses on her behalf; in his second amended petition plaintiff alleged both primary and humanitarian negligence against each defendant. In so far as any specific references to the contents of pleadings become necessary they will be made later. Defendant Dixon cross-claimed against Hullet, in two counts, alleging several grounds of specific primary negligence and humanitarian negligence in failing to warn, stop, slacken or swerve; his first count was for personal injuries and his second for property damage. Hullet cross-claimed against Dixon, in two counts, alleging specific primary negligence and humanitarian negligence in failing to warn, stop, slacken or swerve. By answers the defendants denied generally all respective negligence. Defendant Dixon specifically alleged contributory negligence of Hullet in answer to the latter's cross-claim. Hullet alleged affirmatively that the plaintiff and his wife were engaged in a joint enterprise with Dixon, but that point is not involved on this appeal. All claims were tried together; the theories of the various submissions will be discussed later. The jury found for plaintiff Downing against defendant Dixon in the amount of $5,000 for personal injuries and $400 for loss of Mrs. Downing's services and his expenses; it found in favor of Hullet on plaintiff's claim against him. It found for Hullet on his cross-claim against Dixon, $5,000 for personal injuries, and $740 for property damage. The jury returned no verdict whatever on Dixon's cross-claim against Hullet, a somewhat understandable failure arising in the necessary confusion of claims and contentions. Plaintiff filed no motion for new trial, nor did Hullet. Dixon filed three separate motions for new trial which were overruled by operation of law. He appealed in due course: (a) from plaintiff's judgment against him; (b) from Hullet's judgment against him; and, (c) from "the judgment in favor of Defendant Hullet" on Dixon's cross-claim (as though such had been entered). Judgments were duly entered against Dixon on the verdicts in favor of plaintiff and Hullet, no reference being made therein to any disposition of Dixon's cross-claim against Hullet.

The so-called "South By-Pass" is an east-west concrete road, 22 feet wide, south of

Kennett. At its western terminus it runs into and forms a "T" with Missouri State Highway 25, a north and south concrete road which, south of the intersection, is 19 feet and 2 inches wide. We shall, for convenience, refer to this highway as "No. 25." As the by-pass intersects No. 25, it is widened by a 10-foot apron along its north side,—thus, in effect, affording a three-lane entrance. The collision here in question occurred in this junction or intersection. The terrain in the quadrant south of the by-pass and east of No. 25 is open and flat. Approximately 1,000 feet south of the intersection on No. 25 is a bridge; near the bridge, on the east side, are several signs; of these one is a "Speed Limit 35 miles" sign, one is a Highway Department sign disclosing distances to other towns, and one is a Kennett "City Limits" sign.

It is substantially conceded that from the bridge northward, there is nothing either in the contour of the roadway or in the nature of obstructions, to keep a driver on No. 25 from seeing a car on the by-pass, and vice versa. On the north edge of the by-pass there is a regulation stop sign 57 feet east of the roadway of No. 25, and still further east a "Junction" sign, and a "Stop Ahead" sign. A photograph demonstrates that the view extending southwardly along No. 25 from the stop sign on the by-pass is entirely unobstructed as far as the bridge, and only slightly impeded beyond that point by the bridge railings and the road signs. The bridge seems to be on a very slight rise. The east shoulder of No. 25 for a distance south of the by-pass is practically level and from 8–12 feet wide.

Dixon was proceeding west on the by-pass in his 1955 Ford, with plaintiff Downing on the right side of the front seat and Mrs. Downing in the middle. According to his own testimony, he stopped even with the stop sign (57 feet from No. 25) and looked first to the south, then to the north, and again to the south; he testified that he saw nothing and then proceeded steadily forward at about 5 miles an hour toward and into the intersection, without applying his brakes thereafter at any time; after he got his front wheels on the highway he saw Hullet's car for the first time; it was then about 75 feet[1] to the south, and it seemed to be traveling at 55–60 miles per hour. Dixon further testified: that he wouldn't have "had any chance" if he had stopped then so he tried to speed up and get out of Hullet's lane; that most of his car was across the center line when Hullet hit the left side of his car at about the rear of the hood; that Hullet first swerved to his left, but then cut back to his right immediately before the collision. Dixon further stated that from the by-pass one can see to the bridge and that there was nothing closer to obstruct the view; that he had looked "since" and verified this; that nevertheless he did not see Hullet's car until the time just stated.

Hullet testified: that he had long been familiar with this intersection; that he was driving at 60–65 miles per hour south of the bridge, but there slowed up somewhat; that just prior to the impact he was traveling at 45–50 miles an hour; that he knew he was "in the city" when he crossed the bridge, but he didn't notice the speed limit sign, nor did he know what the speed limit was; that he had seen Dixon's car coming west on the by-pass when it was perhaps "half a quarter" east of the intersection and saw it stop east of the intersection, presumably in the neighborhood of the stop sign; apparently Hullet saw this when he was north of the bridge, but he could not identify his location more closely. He further testified: that when he saw Dixon stop he looked away to the north along No. 25 where there seemed to be a sort of minor traffic jam (north of the intersection) which he continued to watch until the Dixon car showed up "right in front of me," and only 50–70 feet away; that he then "went for" his brake and cut his wheels to the left to try to

[1]. At different places the statements of this distance varied from 4 to 5 car lengths to 150 feet.

miss him; that he could not have stopped after seeing the Dixon car, and could not have missed him by swerving to the right; that he was simply wrong when he said in his deposition that he thought he could have missed Dixon by swerving to his right, although there were no obstructions on the shoulder; that if he had seen Dixon "the second time" when 150 feet away, or possibly even less, he could have "hit my brakes or pulled to the right and missed him," but that the required angle of deviation was too great to permit him to swerve and miss Dixon at 50–70 feet.

For our purpose it is unnecessary to consider the other testimony; only plaintiff testified as an additional eyewitness. The evidence concerning the various and sundry injuries to all concerned is immaterial on this appeal. We do note in passing that plaintiff testified that he first looked to the left just as they started up on the highway and then saw Hullet, at which time Hullet was 3–4 car lengths away, and that he had no time to warn Dixon. The evidence fairly indicates that the roads were dry, although it had been misting further to the east at some time that morning. Both Dixon and Hullet were farmers, if that is of any consequence.

■ We shall first consider the appeal of Dixon from the judgment of plaintiff against him. This claim was submitted upon humanitarian negligence on the part of Dixon in failing to stop when he saw or could have seen Hullet approaching, and when he should have known that plaintiff was in imminent peril. Dixon urges: (a) that humanitarian negligence was not properly pleaded, but was defectively pleaded; (b) that instruction 5–P on the measure of damages was erroneous; and (c) that instruction 7–P was erroneous as injecting primary negligence into a humanitarian submission. Both of these instructions were given at the instance of the plaintiff. We shall consider these contentions in reverse order. Instruction 7–P was as follows: "The Court instructs you that under

the law of Missouri any person driving and operating an automobile upon the public highways must exercise the highest degree of care in the driving and operation thereof, and that failure to so exercise the highest degree of care is negligence. And it is in that sense that the terms 'highest degree of care' and 'negligence' are used in these instructions. By the term 'highest degree of care' is meant such care as a very careful and prudent person would use under the same or similar circumstances." Plaintiff's counsel say that Instruction 7–P is a proper instruction merely defining the "highest degree of care" and "negligence," citing State ex rel. Berberich v. Haid, 333 Mo. 1224, 64 S.W.2d 667. In the case of Reiling v. Russell, 348 Mo. 279, 153 S.W.2d 6, the first paragraph of plaintiff's instruction submitting humanitarian negligence was substantially the same as our Instruction 7–P. The case was reversed for error in giving that instruction. The contentions there, pro and con, were much the same as those we have here. After affirming the doctrine that it is error to inject an element of primary negligence into a humanitarian submission, the court said, referring to the first paragraph of the instruction (153 S.W.2d loc. cit. 8–10): "* * * It permitted the jury to consider any conduct of defendants, either after or before the perilous situation of plaintiff arose. * * * Under plaintiff's instruction No. 1, the jury may have believed that defendants could not have avoided the injury after they saw or should have seen plaintiff in imminent peril and yet, because of the first paragraph of the instruction, may have believed that they should return a verdict against defendants because of excessive speed or some other act of negligence occurring before plaintiff's perilous situation arose. * * * The first paragraph of the instruction in the instant case defines the duty, generally, applicable to any ground of negligence, of persons operating automobiles on public highways. Thus it might lead the jury to believe that they should return a verdict

against defendants if they found them guilty of either primary or humanitarian negligence. * * * But here the plaintiff had the burden of proving negligence upon the part of defendants. He submitted his case solely on negligence under the humanitarian rule, but erroneously inserted a paragraph which gave the jury a roving commission to return a verdict for him on any negligence which may have been shown by the evidence or evolved in the minds of the jury. Such error was not cured by a conflicting instruction given for defendants. * * * For the error noted in plaintiff's instruction No. 1 the judgment is reversed and the cause remanded for a new trial." The Reiling case was followed very recently when this court, in Barnes v. Jones, Mo., 306 S.W.2d 512, reversed the trial court for giving an instruction (separate in form, as ours is) substantially the same as that given in the Reiling case and here. The instruction was again considered as a submission of primary negligence in a humanitarian case. There is no substantial difference between our Instruction P-7 and the instructions held erroneous in those cases. The case of State ex rel. Berberich v. Haid, 333 Mo. 1224, 64 S.W.2d 667, cited by plaintiff, came to this court on certiorari. The court approved an opinion of the St. Louis Court of Appeals which, in turn, had approved an instruction somewhat similar to those under discussion but which apparently omitted any specific reference to "negligence," if that be material. We do not find that the present objection was raised there. The objection to the instruction in that case apparently was that it was merely an abstract statement of law; this court held that it was "not a mere abstraction." The Berberich case has been cited several times as holding that technical terms should be defined, but not, so far as we have found, on the proposition now under discussion. And see also the discussion of a somewhat analogous intruction in Anderon v. Prugh, 364 Mo. 557, 264 S.W.2d 358, 364, 365–366.

It is obvious that Dixon might well have been found guilty of primary negligence in our case, in failing to keep a proper lookout, in failing to see what was open and obvious, and in failing to stop after he left the stop sign and before the plaintiff (and he) came into a position of imminent peril. It may be plausibly argued that Instruction 7–P is not a submission of primary negligence, but the point has been ruled adversely to that contention at least twice by this court and we see no reason to disaffirm those cases here.

Since the judgment in favor of plaintiff against Dixon is to be reversed, we need not discuss extensively the complaint concerning Instruction 5–P. That was plaintiff's damage instruction on Count 1 of his petition (for his personal injuries). After submitting several elements to be considered, the instruction contained the following language: "And on the question of damages, you are instructed that the law does not afford any standard of measurement more accurate than that above, but in connection therewith and all credible evidence relating thereto, the law does permit you to take into consideration your common knowledge and experience in life, but in no event can you award plaintiff on the first count of his petition a sum to exceed $15,000.00; but in naming this amount the Court does not mean for you to find in such sum, or any other sum, but merely mentions the amount beyond which you cannot go, and on this issue of damages you must be governed solely by the evidence relating thereto." That part of the above down to and including the word "life" in line 5 was expressly condemned in the case of Vinson v. East Texas Motor Freight Lines, Mo., 280 S.W.2d 124, 133–134, as tending to depreciate the standards of measurement and the elements previously enumerated, and as encouraging the jury to wander afield. After the present appeal was lodged here plaintiff asked by motion that the case be remanded for error in this instruction, and for retrial on the issue of damages only as between

plaintiff and Dixon. This motion, being opposed by the defendants, was overruled. Counsel now urges, upon a slight change of heart, that the last phrase " * * * and on this issue of damages you must be governed solely by the evidence relating thereto," should operate as a saving grace, taking the instruction out of the operation of the rule announced in the Vinson case. The trouble with that argument is that the instruction condemned in the Vinson case contained an identical clause, with the sole difference that the word "the" was there substituted for "this" (issue of damages). Such does not appear in the opinion but we have verified it from the original transcript. Upon another trial the language in question should be omitted.

■ Defendant Dixon further complains of plaintiff's Instruction 1–P, the verdict-directing instruction on humanitarian negligence. The principal objection to this instruction is that humanitarian negligence is not properly or sufficiently pleaded. To sustain that objection would only result in a remand of the case, and this has already become necessary because of error in Instruction P–7. There is no assurance that the pleadings will remain the same upon another trial. We need not decide this point. Dixon seems to question, casually, whether a guest may proceed in any event against his own driver by a submission of humanitarian negligence, citing Thompson v. Gipson, Mo., 277 S.W.2d 527. The question is not properly included as a point of the brief under our rules, nor is it actually briefed. Under those circumstances we find it unnecessary to decide it.

■ We next consider Hullet's judgment against Dixon, in two counts, on his cross-claim. That submission was on primary negligence under Instruction 13–D–H, which covers more than four pages of the transcript. The asserted negligence submitted was the failure to maintain a vigilant lookout, driving out into the highway in front of Hullet so ·as to constitute an immediate hazard, and failing to yield the right of way. It will be unnecessary to consider that instruction in detail. Dixon urges that Hullet was guilty of contributory negligence as a matter of law, both in violating the speed ordinance of Kennett, and in failing to keep a proper lookout. It is true that Hullet admitted traveling at a speed in excess of the speed limit of Kennett; and Dixon argues that, had he traveled at a lesser speed, the collision would not have occurred. It has been stated many times that the violation of a statute or ordinance is negligence per se (Rice v. Allen, Mo., 309 S.W.2d 629, 631, and cases there cited; Harper & James, Torts, Vol. 2, § 17.6, p. 997; Prosser on Torts, 2nd Ed., § 34, p. 161); but it is also well settled that the violation must be shown to have been the proximate cause of the injury. Lochmoeller v. Kiel, Mo.App., 137 S.W.2d 625; Smyth v. Hertz Driv-Ur-Self Stations, Mo.App., 93 S.W.2d 56; Larsen v. Webb, 332 Mo. 370, 58 S.W.2d 967, 970, 90 A.L.R. 67. Under the circumstances here we cannot say, as a matter of law, that no collision would have occurred had Hullet obeyed that speed ordinance; to attempt a mathematical determination of what might or might not have happened at a different speed and thereby, under different circumstances, would involve a measure of speculation which we are unwilling to undertake. The question of vigilant lookout involves a different situation. In considering that, we must take the evidence most favorable to Hullet. Vinson v. East Texas Motor Freight Lines, Mo., 280 S.W.2d 124, 131. In fact, Hullet's own testimony constitutes the only real evidence on that question. He saw Dixon's car when it was perhaps "half a quarter" east of the intersection; he saw it stop in the neighborhood of the stop sign, which, it is agreed, was 57 feet east of the junction; Hullet was then somewhere north of the bridge, but still a very substantial distance south of the junction. As soon as he saw Dixon stop, he took his eyes off that car, looked at traffic some distance up his own road to the north,

and continuing to travel at 45–50 miles per hour, never, at any time, looked at or saw Dixon's car again until he saw it loom up "right in front of me," at about 50–70 feet. Not only had Hullet seen Dixon's car on the by-pass, but he had passed, and presumably seen, the cautionary signs proclaiming the speed limit, the City Limits, and the Junction, all of which were a warning of potential danger. We hold that this conduct constituted contributory negligence as a matter of law. There were precautions which Hullet might and should have taken had he seen Dixon continuing at a slow but unabated speed toward the junction. A driver having the legal "right of way" does not have the right to assume that the other driver will yield the right of way when the circumstances indicate that he does not intend to do so, and it is still his duty to maintain a lookout. Frandeka v. St. Louis Public Service Co., Mo., 234 S.W.2d 540. And one is legally charged with seeing that which looking would reveal (Id., 234 S.W.2d, loc. cit. 546). Where a plaintiff's own testimony establishes his contributory negligence, the question is one for the court. Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575; Adkins v. Boss, Mo., 290 S.W.2d 139. By way of analogy, we note what was said in the Wilson case, supra, at 285 S.W.2d loc. cit. 582: "Many motorists seemingly have the idea that the mere fact they reach and enter an intersection ahead of a motorist on an intersecting highway gives them the right to proceed across the intersection regardless of the conditions confronting them and relieves them of all caution. This is not the law. Under § 304.010 motorists are required to exercise the highest degree of care at all times and places on the highways cf this state. Gude v. Weick Bros. Undertaking Co., 322 Mo. 778, 783, 16 S.W.2d 59, 60; La Banca v. Pundmann, Mo., 147 S.W.2d 466 [1]." And see the opinion in the same case on a subsequent appeal at 305 S.W.2d 423, in substance reaffirming the duty to continue to maintain a lookout and to act in accordance with the circumstances presented, even if one has the statutory right of way. And in the Adkins case, supra, this court said at 290 S.W.2d loc. cit. 143: "In considering whether or not plaintiff was guilty of contributory negligence as a matter of law, we shall not confine ourselves to the time when plaintiff, in the exercise of the highest degree of care, saw or should have seen and realized there was impending danger of a collision. We shall take into account plaintiff's conduct, and the precautions which the circumstances reasonably demanded antecedent to as well as when plaintiff's own safety was immediately endangered." And the failure to see what is "plainly visible" is contributory negligence as a matter of law. Hamilton v. Laclede Electric Co-Op., Mo., 294 S.W.2d 11, 17; State ex rel. Kansas City Southern R. Co. v. Shain, 340 Mo. 1195, 105 S.W.2d 915; Weis v. Melvin, Mo., 219 S.W.2d 310, 311; Reeves v. Thompson, 357 Mo. 847, 211 S.W.2d 23. See also, generally, White v. Teague, 353 Mo. 247, 182 S.W.2d 288. Considering the different precautionary actions which might have been employed by Hullet had he kept the lookout required, it seems conclusive that his failure to do so played a definite part in the ensuing collision. In other words, had he started precautionary actions sooner it seems clear that he could have avoided the collision, despite any negligence of Dixon. Hullet's actions in ignoring Dixon, and so to speak, insisting upon his "right of way" helped to create the situation. Adkins v. Boss, supra. In the Hamilton case, supra, this court said, at 294 S.W.2d loc. cit. 17: " * * * 'When the negligent act of the plaintiff is necessary to make a dangerous situation negligently created by the defendant effective in harm, the plaintiff's negligence is always a contributory factor in producing his harm and as such prevents him from recovery against the negligent defendant.' 2 Restatement, Torts, 1251, 1252, § 478."

■ The judgment of Hullet against Dixon on his cross-claim will be reversed, but, under all the circumstances, that part

of the cause will also be remanded. It certainly does not appear that Hullet sought any "strategic advantage" (Nelms v. Bright, Mo., 299 S.W.2d 483, 491–492) in choosing a submission on primary negligence and thus subjecting himself to a charge of contributory negligence. It is difficult to see how the evidence would differ materially upon another trial, but if another theory is available we choose to give Hullet the benefit of any doubt, feeling that more complete justice may thereby be done. A remand was similarly ordered in Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575. What we have said on this branch of the case is not to be taken as an exoneration of Dixon of all negligence. It has not been necessary for us to pass upon that question. It is also unnecessary for us to pass upon the propriety of Instruction .13–D–H on this branch of the case.

 The remaining feature for consideration is Dixon's cross-claim against Hullet, which was submitted solely on humanitarian negligence in failing to swerve. Sundry other charged elements of negligence, both primary and humanitarian, were eliminated by the action of the trial court in giving numerous "withdrawal" instructions. Instruction 13–D–H, given at Hullet's request, submitted several charges of primary negligence on the part of Dixon, as previously stated. It concluded with two paragraphs in substance as follows: (a) that if you find for Hullet on his cross-claim then you will also find against Dixon on the latter's cross-claim against Hullet; and, (b) that if you find that Dixon was guilty "of negligence that directly contributed to the collision" your verdict will be against Dixon on his cross-claim. Dixon's cross-claim, as stated, was submitted solely upon humanitarian negligence of Hullet in failing to swerve. The last paragraph of Instruction 13–D–H improperly told the jury that contributory negligence of Dixon would be a complete defense to that claim. Such is wholly improper. Catanzaro v. McKay, Mo., 277

S.W.2d 566; Reiling v. Russell, 348 Mo. 279, 153 S.W.2d 6; State ex rel. Grisham v. Allen, 344 Mo. 66, 124 S.W.2d 1080, 1083; Rosenberg v. Terminal R. Ass'n of St. Louis, Mo., 159 S.W.2d 633, 635. Moreover, contributory negligence was submitted in general terms (Jones v. Rash, Mo., 306 S.W.2d 488). The preceding paragraph of the instruction, "(a)" above, premised a finding against Dixon's humanitarian cross-claim upon a finding in favor of Hullet upon his primary negligence cross-claim. This also was improper; it is conceivable that Dixon may well have been primarily negligent and yet an issue be made by Dixon upon Hullet's humanitarian negligence.

 The jury returned no verdict upon Dixon's cross-claim. That, of course, is a difficulty likely to be encountered in the concurrent trial of several such claims. Counsel for Hullet argue that the failure to return a verdict is of no real substance, that the point is not properly presented in appellant's brief, that Dixon made no case against Hullet upon the humanitarian theory, and that under these circumstances any error in Instruction 13–D–H is immaterial. The cases cited are only generally applicable, and they require no specific discussion. In some cases the verdict of a jury upon a plaintiff's claim or a defendant's counterclaim may be such as necessarily to determine the other claim; but that would only be true where the two claims were so wholly inconsistent that they could not coexist. We do not have that situation here, as we have already stated. The verdict of the jury in favor of Hullet on his primary negligence cross-claim was not a verdict against Dixon on the issues submitted by the latter's humanitarian cross-claim. As we view the situation Dixon simply did not have a completed trial of his cross-claim, even disregarding the serious errors in Instruction 13–D–H; and in that regard we may not speculate on what the jury would or might have done. This matter is one so inherent in the case that we cannot disregard it; and, moreover, it appears from this record prop-

er. The point that no verdict was returned was specifically raised in Dixon's motion for a new trial. This phase of the case will also be remanded for trial. Under these circumstances we need not consider the contention that Dixon made no humanitarian case against Hullet; there being no verdict or judgment on that claim, we think it not only unnecessary, but improper, to consider the sufficiency of the evidence. That evidence was, in effect, nullified when the trial ended without a verdict.

The court inadvertently failed to enter its judgment that plaintiff Downing take nothing on his claim against Hullet, in accordance with the jury's finding. It is directed to do so. That verdict became final. The judgment in favor of plaintiff Downing against defendant Dixon is reversed; the judgment of defendant Hullet against defendant Dixon is reversed. Those two claims, as well as the claim of Dixon against Hullet, are remanded for further proceedings in accordance with this opinion.

STORCKMAN, P. J., and ELMO B. HUNTER, Special Judge, concur.

LEEDY, J., not sitting.