William **MORRISON** et ux., Plaintiffs,

v.

TED **WILKERSON, INC.,** Defendant.

Civ. A. Nos. 18618–3, 18886–3.

United States District Court,
W. D. Missouri, W. D.

Aug. 20, 1971.

As Amended Aug. 24, 1971.

■

Alvin D. Shapiro, John M. Edgar, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., for plaintiffs.

Reed O. Gentry, Rogers, Field, Gentry, Benjamin & Robertson, Kansas City, Mo., for defendant.

## ORDER DENYING DEFENDANT'S ALTERNATIVE MOTIONS FOR JUDGMENT IN ACCORDANCE WITH THE MOTION FOR DIRECTED VERDICT AND FOR NEW TRIAL

WILLIAM H. BECKER, Chief Judge.

These are consolidated actions tried simultaneously before a jury under the diversity statute, Section 1332, Title 28, United States Code, in which plaintiff William Morrison sought damages for injuries suffered by him as the result of an accident on July 15, 1970, allegedly caused by defendant's "negligently and carelessly" blocking Interstate Route No. 35 in Clay County, Missouri, while performing road construction. In Civil Action No. 18886–3, Judith K. Morrison asserted her claim for damages including her loss of consortium claim against defendant. The two actions were consolidated for trial and the trial resulted in a jury verdict on March 15, 1971, for William Morrison in Civil Action No. 18618–3 in the sum of $40,000 and for Judith K. Morrison in Civil Action No. 18886–3 in the sum of $20,000.

On March 25, 1971, defendant filed motions "to set aside verdicts and judgments and to enter judgments for defendant on Count I in accordance with defendant's motion for directed verdict" and a motion for new trial in both causes.

 In support of the motion for judgment in Count I (the negligence claim of Plaintiff William Morrison), defendant states as follows:

"1. Under the law and all of the evidence, the plaintiffs failed to prove that the defendant negligently and carelessly blocked the highway as alleged in Count I of the complaints.

"2. Under the law and all of the evidence the plaintiffs failed to prove that the defendant negligently failed to warn of any dangerous condition of the roadway.

"3. Under the law and all of the evidence plaintiffs failed to prove that either of the aforesaid plaintiffs were damaged as a result of any negligence of the defendant.

"4. Under the law and all of the evidence plaintiffs have proven that the plaintiff William Morrison was negligent as a matter of law in driving at an excessive speed, in failing to keep a careful lookout and in failing to stop his motor vehicle.

"5. Under the law and all of the evidence plaintiffs have failed to prove any facts which entitle them to relief under either of said Counts I of plaintiffs' complaints."

None of the contentions numbered 1, 2, 3, 4 and 5 can be sustained. There was ample evidence admitted during the trial of this cause from which the jury could have concluded, as they did, that defendant failed to use reasonable care in maintaining adequate warning signals while performing construction work on a public highway. See Ferguson v. Ben M. Hogan Co. (W.D.Ark.) 307 F.Supp. 658. The function of the Court in reviewing the evidence on a motion for judgment notwithstanding the verdict is restricted. "In making this determination, the evidence together with all reasonable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party." Giordano v. Lee (C.A.8) 434 F.2d 1227; Simpson v. Skelly

Oil Company (C.A.8) 371 F.2d 563, 567; Altrichter v. Shell Oil Co. (C.A.8) 263 F.2d 377, 380. "A directed verdict is in order only where the evidence points *all one way* and is susceptible of *no* reasonable inferences sustaining the position of the nonmoving party." (Emphasis in original.) Giordano v. Lee, *supra*, 434 F.2d at 1231, and cases there cited. Applying those principles, the Court concludes that the contentions that the evidence was insufficient are without merit.

■■ Defendant contends under contention numbered 4 that plaintiff William Morrison "was negligent as a matter of law in driving at an excessive speed, in failing to keep a careful lookout and in failing to stop his motor vehicle." In support of this contention, defendant states as follows:

"Under all the testimony by which plaintiffs were bound it was established conclusively that:

(a) William Morrison had the ability to see the barrels from a distance of 500 feet; and

(b) Even though there was no interference with his vision he did not see the barrels until he was within 200–250 feet; and

(c) At all times he had the ability to stop with safety within 350 feet; and

(d) He offered no excuse for his failure to see the barrels within the distance in which he could safely stop.

"Under these circumstances it was negligence as a matter of law for the plaintiff not to see the barrels until he was within 200 or 250 feet from them and it was further negligence as a matter of law for the plaintiff not to bring his vehicle to a stop.

\* \* \* \* \* \*

"Thus, when the physical facts presented in evidence by plaintiff established that the barrels were visible from a distance of 500 feet and when the plaintiff testified that he had the ability to bring his vehicle to a stop with safety within 350 feet—and when he admitted that there was nothing to interfere with his vision for at least 350 feet, he is bound by such testimony and his failure to see that which was 'plainly visible' constituted contributory negligence as a matter of law."

Defendant relies on the case of Adkins v. Boss, Mo., 290 S.W.2d 139, recognizing the principle "that a plaintiff is bound by his own testimony." 290 S.W.2d at 140. That case also recognized the principle, however, that:

"In determining the question whether a plaintiff was contributorily negligent as a matter of law, we bear in mind that plaintiff's negligence is a jury question, unless it may be said from all the evidence and the reasonable inferences therefrom, viewed in the light most favorable to plaintiff, the only reasonable conclusion is that plaintiff was negligent and that his negligence was a proximate cause of his injury." *Id.*

Even if plaintiff is, as defendant contends, bound by his testimony that, under normal conditions, he could see for a distance of 500 feet, there is no evidence, by plaintiff's testimony or otherwise, which would support the conclusion that plaintiff William Morrison could necessarily see the barrels with which he collided from a distance of 500 feet.[a1]

---

**a1.** Defendant's reliance on Downing v. Dixon, Mo., 313 S.W.2d 644, 651, to the effect that "the failure to see what is 'plainly visible' is contributory negligence as a matter of law" is therefore misplaced. Defendant also cites cases purporting to stand for the principle that plaintiff William Morrison, under the circumstances, had no right to presume that the highway was clear because the hazard of construction was generally known to him. Rohmann v. City of Richmond Heights, Mo.App., 135 S.W.2d 378, 382; Trantham v. Gillioz, Mo.App., 348 S.W.2d 737. Assuming defendant's interpretation of these cases is correct, the evidence does not show any contributory negligence by plaintiff William Morrison. See also Waldmann v. Skrainka Constr. Co., 289 Mo. 622, 233 S.W. 242, 245.

Plaintiff testified that there were intermediate interferences with his vision and that he did not see the barrels until it was impossible for him to avoid them. Viewing this testimony most favorably to him, the Court concludes that this contention must also be denied. It provides no basis for entering a judgment notwithstanding the verdict. See Simpson v. Skelly Oil Company, *supra*, 371 F.2d at 566–567, to the following effect:

"There is a difference in the function of a judge when he is ruling on a motion for a directed verdict or a judgment n. o. v. and when he passes on a motion for a new trial. Williams v. Nichols, 266 F.2d 389, 393 (4th Cir. 1959). In the former instance, it is his duty to accept the plaintiff's version as true for the purposes of the motion, notwithstanding the existence of strong testimony to the contrary; the judge is not concerned with the weight of the evidence. On the motion for new trial, however, he has wider, though not unlimited, latitude and he may set the verdict aside where it is against the weight of the evidence, or to prevent injustice. McCracken v. Richmond, F. & P. R. R., 240 F.2d 484, 488 (4th Cir. 1957). The standard applicable to consideration and disposition of a motion for a directed verdict or for a judgment n. o. v. is whether plaintiff's evidence is sufficient to support a burden, *ignoring* defendant's evidence. Williams v. Nichols, supra, 266 F.2d at 393."

In the case at bar, the evidence of negligence and the lack of evidence of contributory negligence does not justify either the granting of a motion for judgment notwithstanding the verdict or the granting of a new trial.[1] The evidence heard by the jury gives reasonable support to the conclusion that plaintiff William Morrison was confronted by an unanticipated danger when it was too late to avoid it.[2]

■ Under both federal and Missouri state standards, before a verdict may be directed against a plaintiff on the issue of contributory negligence, the Court must find that the defendant has met the burden of proving that the plaintiff is guilty of negligence as a matter of law and further that the alleged negligence of plaintiff was a proximate cause of his damages as a matter of law. In this case there was a jury question both on the issue of the negligence of plaintiff William Morrison and the issue of proximate causal relation of that alleged negligence to the collision and damages of plaintiffs. It is unnecessary to determine whether the contributory negligence of plaintiff William Morrison would bar recovery by plaintiff Judith Morrison for part or all the damages awarded her. On this subject see Huff v. Trowbridge, Mo., 439 S.W.2d 493 at page 498 and authorities therein cited.

For the foregoing reasons, it is concluded that defendant's motion for judgment in accordance with its motion for directed verdict should be denied.

Defendant has alternatively moved for a new trial, stating the following in support:

"1. The Court erred in admitting into evidence over the objection and exception of defendant, testimony of warning signs placed by defendant at a bridge constructed by defendant in the area of Hickman Mills, Jackson County, Missouri for the reason that such testimony was not material or relevant to any of the issues in controversy; did not prove or tend to estab-

---

1. See pp. 6, 11, *infra*, noting defendant's contentions that the verdict was against the weight of the evidence and against the evidence. For the reasons stated here, those contentions are without merit.

2. Further, there is authority for the proposition that a "party is not conclu-

sively bound by his estimates of time, speed or distance." Highfill v. Brown, Mo., 340 S.W.2d 656, 663; Rudin v. Moss, Mo., 349 S.W.2d 893. Plaintiff Morrison's testimony that normally he could see that far (500 feet) should not be binding on him in the particular circumstances of this case.

lish any of the issues in the instant claims; and was prejudicial to defendant.

"2. The Court erred in admitting into evidence over the objection and exception of defendant, evidence of various accidents and collisions involving motor vehicles and unidentified structural areas at the foregoing bridge in Hickman Mills, Jackson County, Missouri for the reason that such testimony was not material or relevant to any of the issues in controversy; did not prove or tend to establish any of the issues in the instant claims; and was prejudicial to defendant.

"3. The Court erred in admitting into evidence over the objection and exception of defendant, testimony of damage claimed to result from the marital separation of plaintiffs for the reason that such testimony was not a proper element of damages and amounted to speculation and conjecture.

"4. The Court erred in refusing to give to the jury Instruction No. 101 as submitted by defendant withdrawing from the consideration of the jury any claim of damages resulting from separation of the plaintiffs because such claim was not supported by proper evidence.

"5. The Court erred in admitting into evidence over the objection and exception of defendant, evidence concerning future disability or claimed future loss of earnings of plaintiff William Morrison for the reason that such testimony was speculative and conjectural in nature.

"6. The Court erred in refusing to give Instruction No. 102 as submitted by defendant withdrawing the issue of claim of future disability of plaintiff William Morrison to practice osteopathy or the claim of future loss of earnings of said plaintiff because such claims were not supported by the evidence.

"7. The Court erred in limiting and restricting the cross-examination of the witness Box, without objection, by not permitting inquiry on the subject of reaction time and judicial knowledge thereof.

"8. The Court erred in commenting upon such cross-examination of the witness Box and in directing the jury that defendant's counsel had mis-stated the rulings of the appellate courts of Missouri as to judicial notice of reaction time and in directing the jury that the courts had not taken judicial notice of reaction time at ¾ of a second; that such direction and comment was outside of the approved area of comment upon the evidence; that such comment was a misdirection concerning the law and was contrary to the law and did not constitute a proper comment or analysis with respect to any evidence presented in the case.

"9. The verdicts were against the law.

"10. The verdicts were against the evidence.

"11. The verdicts were against the weight of the evidence.

"12. The verdicts were excessive.

"13. The verdicts were so excessive as to establish passion and prejudice on the part of the jury.

"14. The verdicts were the result of passion and prejudice on the part of the jury.

"15. The juror Carol Jo Roark was guilty of misconduct in that she failed to reveal on voir dire examination upon interrogation by the Court concerning previous claims and lawsuits that on or about September 16, 1964, she was injured in an automobile collision in Kansas City, Missouri, and that subsequent thereto she filed an action for personal injuries as a result of said collision; and that thereafter, through her attorney, she and her husband settled the claims arising therefrom for the total sum of $1,625.00; that all of the foregoing circumstances were as more specifically recited in the affidavits as attached hereto and made a part hereof. That the aforesaid failure to reveal said claim and lawsuit was a willful failure

to respond to the Court's inquiry on voir dire examination, and that by reason thereof the verdict was prejudiced and this defendant was prejudiced."

These contentions will be taken up in the order in which they are listed.

■■ In its first two contentions, defendant contends that the Court erred in admitting evidence of conditions around warning signs on the Hickman Mills bridge and evidence of accidents at that place. In support of these contentions, defendant states that:

"Over repeated objection, the plaintiff presented evidence of the conditions at the Hickman Mills Bridge constructed by the defendant and also presented evidence concerning accidents at such bridge. This prejudicial testimony was erroneously received for the reasons that:

(a) The circumstances were not shown to have been substantially the same as the conditions in Clay County, and indeed, were demonstrated to be most dissimilar.

(b) The accidents were not at or near the same location.

"It is the generally accepted rule that proof of previous accidents or proof of similar conditions may be made only if the accidents were at or near the same place and under the same or substantially the same condition.

"In the instant proceedings, although plaintiff claimed similarity, he only made a prima facie showing that the Hickman Mills construction involved a bridge overpass and that the defendant was required to maintain the movement of traffic under the bridge. The total of the evidence disclosed that the accidents occurred at night; that the vehicles collided with barrels placed as center dividers, and with substructures of the overpass and demonstrated further that the bridge construction involved a permanent center divider. The type of lane barrel used was not similar in any respect. Most important, however, was the fact that the numerous accidents of which the jury

was made aware were not even at the same place."

A reasonable construction of the evidence, however, shows that the two locations were substantially similar in that both involved the placing of lane barrels so that they might not be seen until it was too late to avoid an unanticipated danger. The bridges constructed on both projects were similar. So were the methods of construction. The width of the roadways were nearly the same. The terrain and physical characteristics of the roadway and surroundings were similar. The approaches were similar. The barrels were similar. And the same arrow warning truck was used on both projects to warn traffic. In the circumstances of this case, when at the two locations similar warning practices were used by defendant, it is concluded that there was no error to admit the evidence as relevant to the issue of notice of a dangerous condition. The admission of this evidence was within the discretion of the Court. McCormick, Evidence, § 167, pp. 351–352 (1954); Greyhound Lines, Inc. v. Miller (C.A.8) 402 F.2d 134, 139. Only if there is no similarity of conditions can the evidence be deemed inadmissible as a matter of law. Henwood v. Chaney (C.A.8) 156 F.2d 392. "If there is some similarity of conditions, the weight of that evidence would be in proportion to the evidence of similarity, the greater weight to be given where there is greater similarity and the lesser weight where the similarity is less." *Id.* at 397. See also Blackwell v. J. J. Newberry Co., Mo. App., 156 S.W.2d 14, 20 (cited with approval in Kraus v. Auxvasse Stone and Gravel Co., Mo., 444 S.W.2d 434) to the following effect:

"We do not believe that any absolute rule can be established other than that evidence of other accidents or the absence of other accidents is admissible only where the party against whom the evidence is introduced is not, by the nature of the proof offered, deprived of an opportunity of developing, by cross-examination or otherwise, substantially all the circumstances under

which such previous accidents happened or the circumstances in connection with those instances when the peril was avoided."

In the case at bar, full opportunity for cross-examination was accorded. The jury could easily weigh the few differences in the two situations.

In the light of the above principles, in the circumstances of the case at bar, it would be an unwarranted indiscrete ruling to hold the evidence inadmissible, as defendant insists, because the accidents did not take place "at the same place." The substantial similarity of conditions and safety practices made the evidence probative of defendant's notice that its practices, under conditions like those in the case at bar, were creating unreasonable driving hazards. Defendant relies on Kinzel v. West Park Investment Corporation, Mo., 330 S.W.2d 792, 796, for the principle that:

" 'Generally, it may be said that it is not permissible, for the purpose of establishing whether a condition at one place is dangerous, to show conditions at places other than the one in question, particularly places which are remote from the place in question, unless a proper basis has been laid for the admission of such proof.' 20 Am.Jur., Evidence, § 307.

\* \* \* \* \* \*

"[A] proper basis would have to be laid for its admission. The offer of proof would have to include a showing that there was some connection between the two; that the two apartments were on the same wiring circuit and that defects in Apartment 7 or in the other parts of the building would affect the circuit in Apartment 10, or could result in a fire in Apartment 10. The only hint at a connection between the two was that part of the offer of proof that 'when her lights would go on . . . the lights would go off in the Kinzel apartment,' but

this was wholly insufficient for the purpose in question."

In the case at bar, however, a proper basis was laid for the admission of the evidence by establishing a similarity of hazardous conditions and a similarity of safety practices. The prior knowledge of the defendant of prior accidents in a similar situation is a fact material to determining whether the defendant exercised reasonable care at and near the scene of the collision. This contention of defendant must therefore be denied.

Defendant next contends that it was error for the Court to refuse to give its proposed instruction no. 101, to the effect that:

"You are instructed that any claim of damage resulting from any separation of plaintiffs is withdrawn from your consideration."

Instead, the Court instructed the jury on this issue that:

"If you find the issues in favor of the plaintiff Judith Morrison, then you must award the plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe she sustained and is reasonably certain to sustain in the future as a direct result of the occurrence mentioned in the evidence. Said damages may include compensation for diminished support, companionship, sexual intercourse, love and affection."

The proposed instruction was thus unnecessary and may have been contradictory to the rule that, under Missouri law, a wife's consortium action is for loss of her husband's "services, society and companionship." Robben v. Peters, Mo.App., 427 S.W.2d 753. At least it was misleading. The jury could consider any marital separation which the evidence showed was a result of the accident and injuries to plaintiff William Morrison. It was not prejudicial error to refuse the instruction.[3]

---

3. "[O]ne element of consortium [is] the loss of support. Consortium, however, includes, in addition to material services, elements of companionship, felicity and

sexual intercourse, all welded into a conceptualist unity." Hodges v. Johnson, Mo.App., 417 S.W.2d 685; Helming v. Dulle, Mo., 441 S.W.2d 350, 354.

The next contention of defendant is that it was error to admit evidence concerning future loss of earnings of William Morrison "for the reason that such testimony was speculative and conjectural in nature." The evidence received in this case, however, met the requirement that it be reasonably accurate. Dempsey v. Thompson, 363 Mo. 339, 251 S.W.2d 42. For the same reasons, the Court did not err, as defendant contends, in refusing to give its proposed instruction 102 withdrawing from the jury's consideration "the claim of future disability of plaintiff, William Morrison, to practice osteopathy or any issue of claim of future loss of earnings on his part." The plaintiff William Morrison's evidence warranted submission of these issues. The fifth and sixth contentions of defendant should therefore be denied.

Seventh, defendant contends that it was error for the Court to make statements to the jury during the cross-examination of the witness Box to the effect that the Missouri courts had not judicially noticed ¾ of a second as reaction time. During the trial counsel for the defendant made improper and incorrect statements expressing and implying to the jury that the Missouri Supreme Court had determined as a matter of law that the reaction time of all persons was ¾ of a second. The Court had a duty to instruct the jury to disregard these erroneous statements.

The Missouri rule that a court in determining submissibility of a tort case will take judicial notice that an "appreciable time" was required for a person's mind and muscular system to react was first announced in McGowan v. Wells, 324 Mo. 652, 24 S.W.2d 633 at page 639. Later for the same purpose of determining submissibility of a case the Supreme Court of Missouri stated it would take judicial notice that "an appreciable time" is required for a motorist to react and that unless a longer time affirmatively appears in the proof ¾ seconds would be recognized as reaction time. Vietmeier v. Voss, Mo., 246 S.W. 2d 785. The many Missouri cases on this subject are collected in West's Missouri Digest on Evidence under key number 14. (It is implicit that proof of a shorter time may be established by proof.) In this case there was substantial expert evidence of varying reaction times under varying simple and complex situations of danger. To have permitted counsel orally to inform the jury erroneously that a state Supreme Court had judicially determined this litigated scientific fact issue, without corrective action, would have been an abdication of judicial responsibility.

In its brief in support of the motion for new trial, defendant has abandoned any contention that the corrective statement of the court was erroneous, but rather contends that the statement was "on the conduct of defendant's counsel in the course of his cross examination of the witness Box." The comment objected to was a simple statement at the close of the case that the statement of counsel that ¾ of a second was judicially recognized as reaction time by the Missouri Supreme Court had been erroneous. There was no personal reference to defendant's counsel other than that required to identify the time in the trial that the erroneous statement of law had been made. "In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321, 1324. "It is the [federal trial judge's] duty to see that the issues are not obscured, that the trial is conducted in a proper manner, and that the testimony is not misunderstood by the jury, to check counsel in any effort to obtain an undue advantage or to distort the evidence." Russell v. Monongahela Railway Company (C.A.3) 262 F.2d 349, 353. In the light of these authorities, the contention of defendant must be regarded as without merit. The

cases cited by defendant would not lead to a different conclusion.[4]

Defendant's contentions 9, 10 and 11, that the verdicts were against the law and evidence and against the weight of the evidence are adequately dealt with in other portions of this order and throughout the order. These contentions cannot be sustained.

In contentions numbered 12, 13 and 14, it is asserted that the verdicts were excessive; that the verdicts were "so excessive as to establish passion and prejudice on the part of the jury"; and that the verdicts "were the result of passion and prejudice on the part of the jury." In the recent case of Helming v. Dulle, Mo., 441 S.W.2d 350, the Missouri Supreme Court had occasion to uphold damages for a husband in the amount of $35,000 and for the wife of $10,000 in a case not unlike that at bar. The husband was a 48-year-old mechanic who sustained loss of the distal tip of the ring finger of his right hand and multiple fractures on four fingers of his left hand down into his knuckle joints. In this case, the husband has been similarly disabled and his earning ability perhaps more seriously diminished. In discussing the wife's damages, the Court in Helming v. Dulle, *supra*, stated that the award of $10,000 was warranted, with the following analysis:

"After plaintiff's first discharge from the hospital, his both hands were bandaged and his wife was required to assist him when he ate meals, she shaved him and she buttoned his clothing. Plaintiff's handicap still necessitates some services of this character by the wife and since the occurrence he has been somewhat cross and irritable. The evidence further reveals that the wife secured a second position of employment after the occurrence. It is only reasonable to infer from the facts presented by the evidence that this diminished earning capacity has, and will, create some additional problems for his wife. Taken together these varied and sundry duties now fall upon the wife and constitute a disruptive influence in the sphere of family and social life between the parties. There may be some adjustment by the parties but the handicap will remain. It seems rather apparent that the evidence is sufficient to support Count II and under the circumstances the verdict does not appear excessive." 441 S.W.2d at 355.

The Court also held that the jury could consider the escalating wage scale and cost of living in making the award.

██ ██ Much more damaging circumstances than in Helming v. Dulle, *supra*, are shown by the evidence in the case at bar. The following findings could be made by the jury. Dr. Morrison was severely and permanently injured. Mrs. Morrison had for a period of time to dress and undress her husband, attend him every minute of the day, wash him, shave him, attend his every need, even remove his bed pan. She spent night after night sleeping on a chair in the hospital room. A once-happy family life was shattered. Dr. Morrison's cheerful personality was shattered. He became excessively irritable and refused to allow the children or anyone to come near him because of the injuries which he suffered. Normal conjugal relations were disrupted. His personality was radically changed for the worse. Considering that the injuries in this case were more serious than in Helming v. Dulle, *supra*, and

4. Defendant cites Myers v. George (C.A.8) 271 F.2d 168, to the effect that "While the trial judge may, when the situation warrants, discuss the evidence he must do so impartially and abstain from advocacy for either party," *Id.* at 173, and to a similar effect, United States v. 811.92 Acres of Land (C.A.6) 404 F.2d 303; Caskey v. Village of Wayland (C. A.2) 375 F.2d 1004; and Travelers Insurance Company v. Ryan (C.A.5) 416 F.2d 362. But, in the case at bar, when an error of counsel in stating the applicable law for the jury was simply corrected, the contentions of defendant in the case at bar must be deemed without merit.

that the cost of living has increased considerably since that decision, on the principles enunciated in that case, the awards of damages in this case cannot be deemed excessive. The rationale relied on by defendant, that the award should be limited to loss of support and earnings and the wife's actual expenses, cannot be supported by the cases.[5]

The verdict does not shock the conscience or appear to result from passion or prejudice.

Defendant's final contention on the notice for new trial is that the verdict was tainted by the "wilful" refusal of a juror to reveal on *voir dire* questioning that she had been a plaintiff in a personal injury case which was later settled. A hearing principally on this issue was held on April 23, 1971. The juror filed an affidavit to the effect that she was unaware that a court case had actually been filed in her behalf and that:

"When Judge Becker asked us if any one of us knew of any reason why we could not hear and decide the case fairly and impartially, without favoring or disfavoring either side, I remained silent because it was my feeling then and it still is that I could hear and decide the lawsuit fairly and impartially, without favoring or disfavoring either side; and I hereby state that I did, in fact, hear and decide the case fairly and impartially, and I did not favor or disfavor either side. My decision was based solely on the evidence I heard at the trial and the instructions Judge Becker gave us. The fact that I had once made a claim played no part in my decision and it did not influence me in any way. When we took the oath I swore I would hear and decide the case fairly and without prejudice, and I feel I lived up to that oath."

None of the evidence presented at the hearing effectively contradicted the affidavit to the effect that the juror had been unaware of her prior claim and that the undisclosed prior claim had not had any effect on her consideration of the evidence. The defendant has not met the burden of proving the failure to disclose was intentional or prejudicial. Under such circumstances, under either federal or Missouri law, a new trial should not be granted based upon the alleged misconduct of the juror.[6] In Johnson v.

---

5. Defendant states as follows on this issue:

"Our research has failed to reveal any recent Missouri or 8th Circuit case which is sufficiently similar to the facts in our case to be meaningful.

"However, an examination of the relevant testimony and pleadings indicates that the $20,000.00 verdict is unreasonable and out of proportion to Mrs. Morrison's actual loss. The accident and injury to Dr. Morrison occurred on July 15, 1970. He returned partially to his practice in October of 1970, and subsequently returned to full time practice. Plaintiff Judith K. Morrison testified she gave up her employment from the date of the accident until December 28, 1970, on which date she separated from William Morrison. She testified that she was earning the sum of $80.00 per week at the time she left her employment. Using the $80.00 per week figure, her wage loss from the time of the accident until she left her husband in December of 1970, would be approximately $2,000.00.

"Plaintiff Judith K. Morrison also stated in answers to interrogatories that she was required to spend about $1,500.00 of her personal funds. These two figures give a total out-of-pocket loss to plaintiff Judith K. Morrison of about $3,500.00. The remaining sum of $16,500.00 is certainly excessive for any loss of services or consortium suffered in the 5½ months from the date of the accident until the separation of the plaintiffs.

"Defendant respectfully submits that the jury award of $20,000.00 to plaintiff Judith K. Morrison is excessive and unreasonable and defendant is entitled to a remittitur of such award or a new trial."

This arithmetical approach, limited as it is to considerations of loss of support and actual expenses, ignores the statements of nearly all the cases that elements of consortium include companionship, felicity and sexual intercourse as well as loss of support. See Helming v. Dulle, supra, note 3.

6. Defendant contends that federal law applies, stating generally that procedures for examination of jurors are governed by Rule 47(a), F.R.Civ.P.; that the man-

Hill (C.A.8) 274 F.2d 110, the United States Court of Appeals for the Eighth Circuit considered a case wherein a juror had negatively answered on voir dire the inquiry whether any members of his family had been involved in any accident when his son had in fact been involved in an accident resulting in a property damage suit. The Court upheld the denial of a new trial (1) because appellant had had information about the prior accident and damage suit at the time of the empaneling of the jury and failed to object and (2) independently because there was not any prejudice shown to the appellant. On the last reason, the Court stated as follows:

"For an equally cogent reason the contention is without substance. We have nothing before us to establish that the conduct complained of was of such magnitude, standing alone, as to effect the substantial rights of appellant. There is no showing of intentional deception on the part of the juror; the involvement of the juror's son in prior litigation having its origin in an automobile collision does not, in and of itself, furnish adequate legal basis for us, as a reviewing court, to interfere with the considered action of the court in permitting the judgment to stand. The trial judge, in the first instance, has the responsibility and duty to so supervise and conduct litigation proceedings as to afford all parties a fair and impartial trial to the end that justice is served. The rec-

ord satisfies us that the trial judge followed this mandate. He made an investigation of the alleged misconduct of juror Strege and reached the conclusion that the verdict was not improperly influenced. Our rule is that '(a) motion for a new trial is always directed to the sound discretion of the trial court. It is only for a clear abuse of that discretion that an appellate court will reverse.' Stofer v. Montgomery Ward & Co., 8 Cir., 249 F.2d 285, 288." 274 F.2d at 116–117.

The *Hill* case sets forth the rule of this Circuit. This rule is in accord with the last pronouncement of the Supreme Court of the United States on the subject. Raub v. Carpenter, 187 U.S. 159, 23 S.Ct. 72, 47 L.Ed. 119.

Under both federal and Missouri state standards the question whether a new trial should be granted in this case depends upon whether the defendant has been prejudiced, or, in other words, whether the verdict against the defendant has been improperly influenced. In the absence of exceptional circumstances not present in this case, it is the general rule followed in most state and federal courts that a new trial is not warranted by the inadvertent failure of a juror to disclose previous actions or claims unless the losing party establishes prejudice in the sense that the juror was improperly influenced by the undisclosed action or claim. This is particularly true when, as here, the failure to disclose was inad-

ner of the inquiry is within the discretion of the trial court, James v. Continental Ins. Co. (C.A.3) 424 F.2d 1064; and, on a motion for new trial, disposition is a matter of federal procedure rather than state procedure. Silverii v. Kramer (C. A.3) 314 F.2d 407; Prudential Insurance Company of America v. Schreffler (C.A. 5) 376 F.2d 397, 399; Gault v. Poor Sisters of St. Frances Seraph of Perp. Adoration (C.A.6) 375 F.2d 539; and Thomas v. Peerless Mattress Company (C.A.4) 284 F.2d 721. Defendant also cited Byrd v. Blue Ridge Rural Electric Cooperative, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953, 962, to the effect that there is a "strong federal policy against allowing state rules to disrupt the judge-

jury relationship in the federal courts." Although the standard of review of the evidence on posttrial motions must be a federal standard, the courts have often considered state law in determining whether to grant judgment notwithstanding the verdict or a new trial, particularly on the type of question in the case at bar. Farmers Co-op. Elevator Association Non-Stock of Big Springs, Nebraska v. Strand (C.A.8) 382 F.2d 224, 230; Christian v. Hertz Corporation (C.A.7) 313 F.2d 174. But, in this case, under both federal and Missouri law, the motion for new trial on this ground must be denied for the reasons stated in the body of this order.

vertent. Federal Cases: Johnson v. Hill, *supra,* 274 F.2d at pages 116 and 117; Stanczak v. Pennsylvania R. Co. (C.A. 7) 174 F.2d 43 at pages 48 and 49; Orenberg v. Thecker, 79 U.S.App.D.C. 149, 143 F.2d 375. The state cases, including the Missouri cases supporting the rule stated above are included in the Annotations in 63 A.L.R.2d 1061 at pages 1063 to 1065, and in the A.L.R.2d Later Case Service supplementing the annotations at pages 602 and 603 and pocket part page 197. The latest decision of the Missouri Supreme Court supporting the rule is Headrick v. Dowdy, Mo., 450 S.W.2d 161 at pages 165 and 166.

■ While ordinarily the trial court's finding on the issue of lack of prejudice will be sustained by the appellate courts, the fact of prejudice in civil cases may be found from exceptional circumstances, according to the Court of Appeals in the Tenth Circuit. Consolidated Gas & Equipment Co. of America v. Carver (C.A.10) 257 F.2d 111, recognizing the general rule at page 115 but finding unusual circumstances present at pages 115 and 116; Photostat Corp. v. Ball (C.A. 10) 338 F.2d 783, distinguishable on the exceptional circumstances of failure of four different jurors failing to disclose a minimum of ten claims actions and accidents. These latter cases from the Tenth Circuit, relied on by defendant, are readily distinguishable from the case at bar, even if they are less easily distinguished from other similar state and federal cases.

■ In criminal cases, when prejudice is apparent, the appellate courts are more critical of the exercise of the trial court's discretion. For example, see Government of Virgin Islands v. Bodle (C.A. 3) 427 F.2d 532, relied on by defendant. In that forcible rape criminal case a juror had failed to reveal the unforgettable rape and murder of his sister a few years before. In many material facts this case is readily distinguishable from the case at bar.

While federal standards are probably applicable in deciding whether a new trial should be granted in this diversity action for failure of the juror Mrs. Roark to give accurate and full answers to the voir dire question, it is unnecessary so to hold, since the federal and state standards for decision are substantially the same.

At the evidentiary hearing on defendant's motion for a new trial defendant proved by a claims attorney and a receptionist for a chiropractor that the juror Mrs. Roark was injured in an automobile accident on September 16, 1964; that the claim for Mrs. Roark's injuries and the property damage was settled for $1625 by negotiations, and a release and stipulations for judgment were filed, and that a petition for damages had been filed through counsel in state court in Mrs. Roark' s name.

Without objection, Mrs. Roark's affidavit was admitted in evidence. This affidavit stated that, at the time of the voir dire examination, Mrs. Roark was unaware of the filing of the state court action; that "My husband had taken care of the matter and I did not even know a suit had been filed in my behalf."; that her failure to disclose the 1964 injury, claim and suit was inadvertent; that at the voir dire examination she didn't know she had been a plaintiff, and didn't understand that the inquiry about a claim by the Court referred to the type of claim for her injuries in the accident six to seven years before; and that she was not influenced by the claim and suit in arriving at the verdict, which was based solely on the law and the evidence.

■ Considering all the evidence it is hereby found that the defendant has failed to show that it was prejudiced by the failure of Mrs. Roark to answer the inquiry. It is further found that her answer was inadvertent. In addition, the evidence greatly preponderated in favor of the plaintiffs on the issue of liability. The damages awarded were amply supported by substantial evidence. The jury was unanimous in its findings. There

is no indication of prejudice to defendant.[7]

While it is not submitted as a ground for decision in this case, it is noted that this trial lasted 4 days and 3 nights. The jury list was available before trial. The information about Mrs. Roark's claim was readily available to defendant's counsel through the insurer's index bureau. If the information had been secured early the replacement or discharge of Mrs. Roark could have been considered before she was empanelled or the case was submitted to the jury. It is not in the interest of justice to have counsel wait until a case is lost to make inquiry in depth concerning the selected jurors to use in securing a new trial, when the information is readily available to counsel before or during trial.

For the foregoing reasons, all of the contentions of defendant in support of its motion for judgment notwithstanding the verdict in accordance with its prior motion for directed verdict and for new trial are without merit and the motions should therefore be denied.

---

7. Prejudice did not result to defendant for the additional reason that counsel for defendant agreed in a conference on March 10, 1971, that, in case the Court for some unanticipated reason might find it necessary to excuse one of the original 12 jurors that the remaining jurors, not less than 11 in number, could return a verdict.