**Henry L. BEANLAND, Plaintiff,**

v.

**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, et al., Defendants.**

**No. 18808–1.**

United States District Court, W. D. Missouri, W. D.

June 20, 1972.

See also, D.C., 345 F.Supp. 227.

Jo B. Gardner, Monett, Mo., for plaintiff.

Neal E. Millert, David R. Odegard, James & McCanse, Kansas City, Mo., for defendants.

## MEMORANDUM OPINION DENYING DEFENDANT'S POST-TRIAL MOTIONS

JOHN W. OLIVER, District Judge.

### I.

This case pends on defendants' motion for new trial and its alternative motion for remittitur of the $275,000 verdict rendered by the jury in this FELA case. Final ruling of those motions was necessarily delayed because of the necessity for directing further proceedings in connection with ground 17 of defendants' motion for new trial. It was there alleged that defendants had been deprived of a fair trial by the alleged misconduct of two members of the jury. We filed a memorandum opinion in connection with that question on February 23, 1972, and incorporate what was there said as a part of this memorandum opinion by this reference. That

222

memorandum opinion is published immediately following this opinion. We shall discuss and rule the additional questions presented in regard to ground 17 in Part V of this opinion.

## II.

Defendants' motion for new trial alleges sixteen other separate grounds of alleged error. Its alternative motion for remittitur is based on five separate grounds. Many of the grounds alleged in both motions are stated in stereotyped form, e. g., "the verdict is contrary to the evidence elicited at the trial;" "the verdict of the jury herein is excessive." Numerous questions are raised in regard to instructions given and refused. Some of the grounds relate to questions of rulings on the admissibility of evidence. We have carefully reviewed our notes made during trial and are confident that the rationale of our rulings is clearly apparent of record and that additional discussion of those rulings, with two exceptions, would not be of benefit to the Court of Appeals. We state, however, that we have carefully considered each of the alleged grounds separately in light of the voluminous briefs filed by the respective parties and have concluded that defendants' motion for new trial and its alternative motion for remittitur should be denied.

## III.

▇ In addition to supplementing our discussion of ground 17 of defendants' motion for new trial (which relates to the alleged misconduct of two members of the jury), we believe it is appropriate to discuss ground 5 of defendants' motion for new trial which alleges that "the Court improperly refused defendants' motion for a continuance."

The files and records of this Court show that by operation of this Court's local rules this case was initially assigned to Division 2, presided over by the Honorable William R. Collinson. It was then processed for trial in the same manner as every other case which reaches this Court's accelerated docket. The procedures under which it was processed were designed to avoid the delays and needless loss of judicial time and juror expense occasioned by practices which would otherwise exist if counsel, rather than the Court, were permitted to control the docket of this Court by seeking and easily obtaining continuances of cases set for trial.

Counsel were advised by a notice mailed July 26, 1971 by the Clerk's office that during the period between October 26, 1971 and about November 12, 1971, all four divisions of this Court would be in continuous session for purposes of trying the civil jury cases listed, which, of course, included this case. Counsel were requested in July to arrange their schedule so that no request for postponement would be made the following October. That notice expressly emphasized that *"none of the cases set for trial during this period will be continued because of conflicting engagements."* A form was enclosed with the July notice which requested that lead trial counsel be listed so that the trial docket could be arranged with the least possible conflict.

Judge Collinson, on October 7, 1971, approved Amended Standard Pretrial Order No. 2, which had been filed in accordance with Local Rule 20. That order, of course, was also approved by counsel for both parties. Judge Collinson set the case for final pretrial conference for October 19, 1971.

The regular accelerated docket of this Court, which had been issued October 6, 1971, carried a setting of November 1, 1971 for the trial of this case. Defendants' motion for continuance shows that Judge Duncan reset the case which pended in the St. Joseph Division, which counsel claimed as a conflicting setting, from October 26, 1971 (the first week of the accelerated docket) to November 1, and still later to November 8, 1971. The files and records show that the original November 1, 1971 setting for this case was moved to November 8, 1971. We do

not know the precise circumstances under which the shifts were made in the two Rock Island cases which pended in the St. Joseph Division and in the Western Division of this Court.

Judge Collinson, in a pretrial order dictated to reflect the proceedings of the final pretrial conference, stated that the final pretrial conference had been held as scheduled and that, after a lengthy discussion of conflicting dates of trials, the Court had ordered that the case remain on the docket for trial on November 8, 1971. Judge Collinson's order reflects that the "defendants announced that they would file a motion for continuance because of these conflicts and because of lack of discovery of additional injuries now listed by the plaintiff." October 20, 1971, the day after the final pretrial conference, defense counsel filed such a motion asking the Court to remove the case from its November 8, 1971 trial setting "for the reason that trial counsel is unable to adequately prepare this cause for trial on that date because of a conflicting trial setting in this District, together with the other circumstances set forth in the Suggestions submitted herewith."

Judge Collinson's order denying that motion stated:

Defendants have filed herein a motion for continuance to continue the trial setting on November 8, 1971. After an examination of this motion, a discussion with Judge Richard Duncan and a discussion with Chief Judge Becker of this Court, and being fully familiar with all the matters pertaining to this because of a pretrial conference which was held this week, the Court could find no merit in the request for continuance. It is therefore

ORDERED that the defendants' motion for continuance be, and it is hereby, denied.

By usual operation of the standard accelerated docket procedures of this Court, the case was assigned for trial to Division I. Defendants' motion for a continuance was orally renewed after that assignment on the same grounds already considered and ruled by Judge Collinson. At the request of counsel we discussed Judge Collinson's ruling with him and were satisfied that no exceptional circumstances were presented which required this Court to take any different view of the matter than that taken by Judge Collinson on October 22, 1971 after he had discussed the matter with both Judge Duncan and Chief Judge Becker.

We were satisfied that the granting of any continuance under the circumstances would have established a precedent which, if followed in other cases, would disrupt the orderly processing of the heavy docket of this Court. The defendant was entitled to have its motion for continuance ruled in accordance with law. We were and are satisfied that defendant was accorded that right. Defendant was not entitled to more.

The transcript of the proceedings in this case reflects that defendants' professed fear of being unable to prepare for trial was totally unfounded. Both Mr. Millert and Mr. Odegard tried this case in a highly competent manner which would have been impossible had they been unprepared. Neither ever complained about being surprised by anything that occurred during the trial. We find and conclude that the case was tried well on both sides; that there was a minimum of objections; and that we are satisfied that the denial of any continuance in this case did not prejudice the defendants in any manner. We are confident that substantially the same result would have been reached had the case been defended by any other two of the partners in the law firm retained by the defendants.

IV.

Separate consideration must be given defendants' alternative motion for remittitur. Although defendants concede that "there was some expert opinion that plaintiff's earning capacity may be permanently impaired," it nevertheless

seeks to have this Court reduce the amount of the verdict returned by the jury.

The Court of Appeals for the Eighth Circuit most recently collected the applicable cases in Scoville v. Missouri Pacific Railroad Company, (8th Cir., 1972) 458 F.2d 639. In *Scoville*, the railroad complained that a $73,575 verdict for one group of plaintiffs and a $65,952 verdict for another group of plaintiffs in a railroad crossing case was plainly excessive as a matter of law because a $35,000 verdict was the highest ever sustained by the Supreme Court of Arkansas in a wrongful death action for the death of a child. The Missouri Pacific unsuccessfully suggested that the Court of Appeals recognize that juries are "sometimes prone to return verdicts against railroads despite the law or the facts."

The Court of Appeals was not persuaded that the jury verdicts in that case were either "monstrous" or "plainly unjust" within the meaning of the rule of decision established in the numerous Eighth Circuit cases which it cited in footnote 20. That case also emphasized the responsibility of the trial judge to make a fair and objective finding of the atmosphere of the trial in evaluating whether the jury had been improperly induced to act out of passion or prejudice in arriving at the verdict. Judge Johnsen, when Chief Judge, stated the above rule even more fully in Chicago, Rock Island and Pacific Railroad Company v. Melcher, (8th Cir., 1964) 333 F. 2d 996, at 1001, one of the cases relied upon in Scoville v. Missouri Pacific.

The cases cited by the defendants do not suggest any different standard. De-

fendants do, however, make reference to the results of three remittitur cases decided by the Supreme Court of Missouri in 1952, 1954, and 1960. The recent article by James E. Hullverson, "Remittitur and Other Things," published in 28 Journal of the Missouri Bar 81, tends to support the idea that the continued involvement of both Missouri trial and appellate courts with remittiturs may be undergoing a substantial reevaluation by the Supreme Court of Missouri. It was there noted, we think correctly, that "the most recent opinions [of the Supreme Court of Missouri] dismiss claims of excessiveness tersely without benefit of three or four pages of rationale." [1]

We find and conclude that the $275,000 verdict in this case was not excessive. Indeed, under the evidence adduced, we would have been neither surprised nor shocked by a verdict of a greater amount. We expressly find that, in our judgment, there were no incidents at the trial which could fairly be said to have unduly increased the amount of the verdict. We suspect that in this case, as in most, there may have been particular members of the jury who might have agreed to a verdict of a larger amount, just as there may have been members of the jury who might have agreed to a verdict of a lesser amount. After full and fair deliberation, the jury decided that $275,000 was an appropriate verdict.

The amount that the jury did agree upon was, in our judgment, certainly within the range of what a reasonable jury could find under all the facts and circumstances; and we are convinced that any action on the part of this Court to second guess the jury would be wholly

---

1. The author supported his suggestion that courts should trust juries with the following comment:

Tolerance [by Missouri trial and appellate courts] in entertaining requests for remittitur based on mere excessiveness has accomplished two things. First, docket congestion, because the defense has been encouraged not to settle when they have three shots at a plaintiff— the jury, the trial court and appellate court. Why settle with such odds? Second, it has created a mountain of work for the courts and lawyers who fastidiously rehash all of the facts of the case. None of this occurs in the federal courts where you keep what you get and both sides khow it and move on to the law questions. [Ibid., p. 96]

unwarranted. Defendants' alternative motion for remittitur will be denied.

## V.

The plenary evidentiary hearing ordered February 23, 1972 in regard to ground 17 of defendants' motion for new trial was held April 18, 1972.[2] On May 2, 1972, in light of United States v. Handy (9th Cir., 1972), 454 F.2d 885, we directed defendants to prepare, serve, and file a suggested list of questions which they believed should be propounded to the particular jurors involved.

There have been two significant developments since defendants filed their proposed questions on May 8, 1972. First, on May 17, 1972, the mandate of the Court of Appeals for the Eighth Circuit, which reflected the affirmance of the judgment in Morrison v. Ted Wilkerson, Inc., 343 F.Supp. 1319, was filed in this Court. That mandate shows that the judgment in that case was summarily affirmed on April 13, 1972 under the Court of Appeals' Local Rule 14. That action establishes that no error of law appeared in Chief Judge Becker's determination of that case. We, of course, have heretofore indicated our agreement with Chief Judge Becker's discussion of the applicable law and of the cases cited on pages 1330–1333 of his memorandum opinion in the Morrison case, 343 F.Supp. 1319.

The second significant development was our receipt on June 2, 1972, of the Report on Post-Trial Interrogation of Jurors to the Committee on Operation of the Jury System which the Judicial Conference of the United States approved at its last session. That approved report shows that the procedures directed in Morrison and the procedures directed in this case were consistent with the applicable law. That report also puts in clear focus the principles which must be applied to the question of whether this Court should set this case for still an additional evidentiary hearing at which the two jurors would be called as witnesses. It concluded that "From the time of the decision in McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L. Ed. 1300 (1915), the federal judiciary has never been favorable to allowing an open season on jurors in either civil or criminal cases." [Ibid., p. 36].

The report directed attention to Rule 606 captioned "Competency of Juror as Witness" of the Proposed Rules of Evidence for the United States Courts and Magistrates which were also recently approved by the Judicial Conference, and concluded that proposed Rule 606 is already "the established rule in the federal courts" [Ibid., p. 38].[3]

The Advisory Committee's Note to Rule 606 recognized that "the familiar rubric that a juror may not impeach his own verdict, dating from Lord Mansfield's time, is a gross oversimplification." But equal recognition was given to the principle included in the rule which requires the exclusion of most, but not all, testimony by a juror. That principle is based upon valid and important considerations which relate to a jury's "freedom of deliberation, stability and finality of verdicts, and protection of jurors against annoyance and embar-

---

2. That hearing was originally set for March 2, 1972, but was continued on defendants' motion. It could not be held earlier for reasons with which counsel are familiar.

3. Rule 606(b), as amended, states:
   Upon inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations *or to the effect of any thing upon his or any other juror's mind or emotions as influencing him to assent* to or dissent from the verdict. . . . or concerning his mental process in connection therewith, except that a juror may testify on the question of whether or not extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received. [Emphasis added].

rassment." The Advisory Committee relied upon the Supreme Court's decision in McDonald v. Pless, *supra*, in the same manner as the Judicial Conference report was later to do.[4]

■ Rule 606 makes it clear that a juror may *not* testify in regard "to any matter or statement occurring during the course of the jury's deliberation or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent or dissent from the verdict . . . or concerning his mental process in connection therewith." Rule 606 provides a narrow exception to Lord Mansfield's rule in that it provides that a juror *may* testify "on the question of whether or not extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror."

■ Careful examination of all of the questions proposed by the defendants makes it clear that, for the most part, defendants simply want to confirm data established by documentary evidence. A few of the proposed questions would get into other areas. Proposed Question 28 to the first juror, for example, states: "Because of your personal experience did you feel you had a better understanding of the facial lacerations, broken fingers, back pain, and disability of the plaintiff than the other members of the jury who had not suffered from such problems?" Proposed Question 30 to that juror would seek to inquire: "During the course of the trial did you recall any of the various injuries which you had suffered? If not, when did you first recall any of these various injuries? If yes, did you make any attempt to inform the Court of what you recalled?" In similar manner, Proposed Question 11 for the second juror would ask whether: "As a result of your personal experience, did you feel that you had a better understanding of

the various injuries and disability claimed by plaintiff than the other members of the jury?"

None of the proposed questions seek to make inquiry as to whether either of the jurors brought any information concerning their alleged respective injuries to the jury's attention or whether they attempted in any way to bring any sort of outside influence to bear upon any of their fellow jurors. It is clear that defendants' proposed questions were designed only to elicit information which may have affected each particular juror's mind or emotions. We find and conclude that the proposed questions attempt to elicit information within the ban of the established principles codified by Proposed Rule 606. We therefore find and conclude there is no necessity for any further evidentiary hearing in connection with defendants' pending post-trial motions. Defendants were afforded a full and fair opportunity to state exactly what they wished to ask the jurors. The questions which defendants proposed show that, apart from that which is already a matter of record, they seek testimony which a juror is not competent to give under the principles codified in Proposed Rule 606.

Application of the principles stated in detail in our Memorandum Opinion filed February 23, 1972 and of the principles stated herein require that we conclude that defendants' position in regard to the alleged misconduct of the two jurors on voir dire examination is not tenable. This second memorandum opinion, as our memorandum opinion of February 23, 1972, was circulated among all the active judges of this Court.

Chief Judge WILLIAM H. BECKER, and Judges WILLIAM R. COLLINSON and ELMO B. HUNTER have authorized me to state that each concur in our statement of the applicable law as stated in this opinion as they had earlier indicated their concurrence in the memorandum opinion of February 23, 1972.

---

4. We cited and relied upon McDonald v. Pless in our Memorandum Opinion of February 23, 1972.